**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

BILLY WAYNE CARTER,

      *Defendant-Appellant.*

No. 09-4451

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:08-cr-00254-1)

Argued: January 29, 2010

Decided: April 1, 2010

Before WILKINSON and AGEE, Circuit Judges,
and R. Bryan HARWELL, United States District Judge for
the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Harwell wrote the
opinion, in which Judge Wilkinson and Judge Agee joined.

## COUNSEL

**ARGUED**: Jonathan D. Byrne, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Charleston, West Virginia, for Appel-
lant. Monica Lynn Dillon, OFFICE OF THE UNITED

STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Christian M. Capece, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

**OPINION**

HARWELL, District Judge:

This case presents the question of whether a defendant's sentence may be enhanced under U.S.S.G. § 3C1.2 for reckless endangerment during flight when the defendant enters the residence of another person without that other person's permission. Defendant, Billy Wayne Carter, appeals his forty-six month sentence resulting from his guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Carter asserts that the district court clearly erred by enhancing his sentence two levels under U.S.S.G. § 3C1.2 based on the conclusion that that he recklessly created a substantial risk of serious bodily injury when he entered the apartment of another person while fleeing on foot from officers attempting to arrest him.

I.

On November 13, 2008, an undercover officer observed Carter taking part in suspected drug activity on a street in Charleston, West Virginia. Carter then entered a maroon van and travelled to a nearby convenience store. While at the store, Detectives Griggs and R.G. Henderson, two other officers with the Special Enforcement Unit, responded to the area. When Carter left the store, he noticed Henderson standing near the maroon van, and turned and walked back toward

the store. Griggs identified himself as a police officer, but Carter continued toward the store. Griggs then attempted to grab Carter by the arm, but Carter pulled away and ran into the store. The officers attempted to subdue Carter inside the store, but he escaped, losing his shirt and jacket in the process, and started running down the street. The officers ordered Carter to stop, but Carter ran through a bank parking lot to a point between two houses, where Henderson observed Carter throw a clear plastic bag over a fence. The bag was later recovered and found to contain crack cocaine. Carter then ran between two other houses and was lost from view.

The police then received a 911 call informing them that Carter had been witnessed entering a nearby apartment building. Upon arriving at the scene, Officer Charles Young spoke to a resident of the building, Charles Hill, who informed Young that Carter had entered Hill's apartment without his permission, and put on one of Hill's shirts, at which point Hill left the apartment. The officers went to Hill's apartment, and knocked and announced their presence. Hearing no response, the officers entered the apartment and found Carter seated on a couch, wearing a shirt belonging to Hill. Carter was then arrested without further incident.

Carter pled guilty, pursuant to a plea agreement, to possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The probation officer prepared a presentence investigation report in which it was recommended that Carter's base offense level of twenty-four be enhanced two levels under U.S.S.G. § 3C1.2 for reckless endangerment during flight from a police officer. The probation officer also recommended that Carter be awarded a three level credit for acceptance of responsibility. Carter objected to the enhancement for reckless endangerment.

A sentencing hearing was held on April 22, 2009. During sentencing, the parties presented evidence and argument regarding the reckless endangerment enhancement. Specifi-

cally, the court heard testimony from Detective Henderson regarding what he had heard from the other officers about the circumstances surrounding Carter's arrest, and what Hill had told those officers when they arrived on the scene. Henderson testified that Hill told Officer Young, upon Young's arrival, that Carter had entered Hill's apartment without his permission and while Hill was present in the apartment. Henderson also attempted to read a witness statement handwritten by Hill at the time of the incident that purportedly stated that Hill was not present in his apartment when Carter entered. Ultimately, in overruling Carter's objection, the district court concluded that Hill had been present at the time Carter entered his apartment and found that the probation officer had properly applied the enhancement for reckless endangerment during flight. In applying the enhancement, the district court stated that "the defendant's entry of the apartment without the permission of its occupant who was in the apartment at the time constituted in itself a substantial risk to Mr. Hill and indeed a substantial risk that is inherent at any time anyone enters another's home without permission." Furthermore, the district court held that the substantial risk continued when the officers had to force entry into the apartment to arrest Carter, noting that "there is inherent danger any time an officer must get behind the closed door in order to apprehend an individual who has just invaded a home, not knowing what may then ensue." The district court then sentenced Carter to forty-six months' imprisonment. This appeal followed.

## II.

This court exercises jurisdiction over this appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. When evaluating a challenge to a sentence enhancement, we review the district court's factual findings only for clear error, and "[i]f the issue turns primarily on the legal interpretation of the guidelines, our review is *de novo*." *United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996). We review the district court's application of the reckless endangerment enhancement for clear

error. *See United States v. Harrison*, 272 F.3d 220, 223 (4th Cir. 2001); *see also United States v. Sloley*, 19 F.3d 149, 154 (4th Cir. 1994).

## III.

As an initial matter, Carter contends that the district court erred by concluding that Hill was present in his apartment when Carter entered without permission. The district court based its factual determination on two sources: (1) the testimony of Henderson, who related both what he had been told by the arresting officers, and what he had been told by the officer who interviewed Hill, and (2) the partially illegible witness statement handwritten by Hill on the date of the incident. According to Henderson's testimony, Hill was present in the apartment when Carter entered Hill's apartment without permission. We find that the district court did not clearly err in determining that Hill was present in the apartment when Carter entered, based on Henderson's testimony. *See United States v. Roberts*, 881 F.2d 95, 105-06 (4th Cir. 1989) (stating that hearsay evidence is admissible in sentencing proceedings so long as the information has sufficient indicia of reliability); *see also* U.S.S.G. § 6A1.3(a). Not only was the district court's determination buttressed and supported by the fact that the circumstances surrounding Carter's eventual arrest corroborated the information the other officers had relayed to Henderson, but Carter's argument that the handwritten statement actually contradicts Henderson's testimony is unpersuasive given the fact that parts of the written statement are illegible. However, notwithstanding the above finding, Hill's actual location at the time Carter entered his apartment is irrelevant as to the appropriateness of the reckless endangerment enhancement under the circumstances of this case.

A two level enhancement of a defendant's sentence is appropriate under U.S.S.G. § 3C1.2 "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law

enforcement officer . . . ." An individual's acts are considered "reckless" when he "was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. §§ 2A1.4 cmt. n.1, 3C1.2 cmt. n.2.

Carter contends that the district court clearly erred by finding that his conduct was sufficient to support the two level enhancement for reckless endangerment during flight. At sentencing, the district court, reviewing the facts as set out in the presentence investigation report, concluded that Carter's conduct leading up to the time he entered Hill's apartment posed some risk, but not a substantial one, and the parties agreed. Therefore, the only question presented for the district court was whether Carter's act of entering Hill's apartment without permission, and everything that followed, created the substantial risk required by U.S.S.G. § 3C1.2. Carter admits that he entered Hill's apartment without permission, but argues that he did not forcibly or violently enter the apartment and that once the officers arrived, he was arrested without further incident. It is undisputed in the record that once the officers entered Hill's apartment, Carter did not resist arrest in any manner.

However, upon review of the record, we find that the district court was correct in applying the enhancement for reckless endangerment during flight based on Carter's actions. While this court agrees with Carter that something more than "mere flight" is required for the enhancement to apply, we find that Carter's entering Hill's residence without permission constitutes more than "mere flight." *See United States v. John*, 935 F.2d 644, 648 (4th Cir. 1991) (stating that "mere flight from an arresting officer," by itself, does not warrant an enhancement).

By unlawfully entering Hill's residence, regardless of whether Hill was present in the apartment at the time, Carter

created a substantial risk of death or bodily injury sufficient to justify the enhancement under U.S.S.G. § 3C1.2. As the district court correctly noted, there is a "substantial risk that is inherent at any time anyone enters another's home without permission." If the resident is present at the time the stranger enters the residence without permission, the substantial risk of injury or death is obvious as many renters or homeowners would resort to violence and force to prevent such entry. Arguably, many residents keep firearms in their homes for the sole purpose of defending themselves from intruders. The unknown possibility of the use of such a weapon substantially increases the risk of serious bodily injury or death to the resident and the pursuing officers, as well as other nearby residents and neighbors. Similarly, even if the resident is not present at the time of entry, the same risk is created by a stranger entering another's home without permission in an attempt to evade police. In such a situation, a violent struggle causing death or serious bodily injury could just as easily ensue upon the resident's returning home and finding the unexpected and unwelcome stranger. Moreover, as long as the defendant's conduct creates the substantial risk of injury or death, it is not required that his conduct actually cause physical harm.* Accordingly, the reckless endangerment enhancement under U.S.S.G. § 3C1.2 is appropriate when a defendant, during flight from the police, enters the residence of another person without that other person's permission, and

---

*In *United States v. Jimenez*, 323 F.3d 320 (5th Cir. 2003), the Fifth Circuit Court of Appeals, in discussing that issue, held the following:

> To construe the guideline to require that the defendant's conduct result in actual harm or present particularly dangerous or egregious circumstances would necessitate us to disregard the clear language of the commentary to the guideline, which simply requires that the defendant be aware that his conduct creates a risk of such a nature and degree that to disregard that risk grossly deviates from the standard of care a reasonable person would exercise under similar circumstances.

*Id.* at 324 (citing U.S.S.G. § 2A1.3 cmt. n.1.).

regardless of whether that other person is present within the residence at the time of entry.

## IV.

For the foregoing reasons, we conclude that the district court did not clearly err in applying the reckless endangerment enhancement to Carter's sentence. Accordingly, we therefore affirm the sentence imposed by the district court.

*AFFIRMED*